### In re CRAIG LUMBER CO.

### COBB et al. v. HILLS-CORBET CO.

(Circuit Court of Appeals, Ninth Circuit. January 3, 1921. Rehearing Denied February 14, 1921.)

No. 3552.

1. **Sales** ⟜454—**Agreement to install sawmill machinery held conditional sale.**

An agreement whereby claimant was to buy and pay for sawmill machinery and install it in a mill of the bankrupt, which expressly provided that the title to the property therein agreed to be sold should not pass until it was paid for, and that on default of payments the claimant might retake the property agreed to be sold, is clearly a contract for conditional sale of the machinery, though the expense of erecting buildings and installing the machinery was included in the sum to be paid before title passed, and was not an appointment of the claimant as agent for the bankrupt to purchase the property.

2. **Sales** ⟜464—**Conditional sale contracts are valid.**

A conditional sale contract, whereby the title is not to pass to the buyer until the purchase price is paid is valid, when free from fraudulent intent.

3. **Payment** ⟜46(1)—**Properly applied first to least secured claims.**

Payments made by a millowner to a contractor, who had retained title to the machinery installed in the mill until fully paid for, which were not applied by the parties, were properly applied by the court to the payment for the buildings and the labor of installation, under the rule followed in the federal courts that it is equitable to extinguish first those debts for which the security is most precarious.

**4. Fixtures ☞22—Machinery and sawmill on government property held not a fixture.**

Machinery placed in a sawmill erected on piles on the tideland, within a forest reservation, so that the title to the land remained in the government, and which could be removed from the mill without injury to the building, are not fixtures; but the seller can reclaim them under his conditional sale contract from the trustee in bankruptcy of the millowner.

Appeal from the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

In the matter of the Craig Lumber Company, a corporation, bankrupt. From a judgment in favor of the Hills-Corbet Company, a copartnership composed of F. R. Hills and W. W. Corbet, for the balance due on a contract with the bankrupt for conditional sale, E. L. Cobb, as trustee of the bankrupt, and another, appeal. Affirmed.

In the court below, in a bankruptcy proceeding, the appellees filed their petition to reclaim certain machinery and fittings which they had placed in the bankrupt's sawmill in accordance with a contract performed before the bankruptcy. The court below upon the pleadings and the evidence found the facts to be substantially as follows:

That on October 31, 1917, the appellees and the bankrupt entered into a contract whereby the appellees agreed to furnish all machinery, fittings, etc., necessary to equip the bankrupt's sawmill at Craig, Alaska, in accordance with specifications, and agreed to install said machinery and erect necessary buildings therefor. The contract provided that the cost of the sawmill complete should not exceed the estimate of $32,125. It contained a provision that the title to the "apparatus and material herein agreed to be sold" should not pass from the appellees until fully paid for in cash, that upon defaults in payments the appellees might retake the property "agreed to be sold," and in that event it was agreed that the money theretofore paid to the appellees on the contract should be presumed to be the amount of their liquidated damages to be retained by them for breach of the agreement; that the contract further bound the bankrupt to pay the appellees the actual cost of labor and machinery, equipment, and building material, cost of insurance charges, of material and men from Seattle, Wash., to Craig, Alaska, plus 10 per cent., and the bankrupt agreed to pay the appellees in installments, the last of which to be due 30 days from completion of contract; that the appellees fulfilled their contract on or about May 1, 1918; that there remained due them the sum of $12,980.36 on the contract; that before the trial of the cause the trustee in bankruptcy and the Bank of Alaska entered into a stipulation with the appellees whereby the bank took possession of the property described in the contract, and stipulated with the appellees that, if the court should find the contract to be a conditional sale contract, it should make a further finding as to the amount due the appellees under the contract, which sum, if so found, the bank undertook to pay; that the sawmill is constructed on piles on tidelands in a forest reservation, title to which is in the government, and that all the machinery, etc., were so attached to the building as to be easily removable therefrom without damaging the same; that the Bank of Alaska, a party to the suit, holds a mortgage upon the mill and the machinery, but at the time of the execution of said mortgage the bank had notice of the conditional sale contract, and that the appellees had not been fully paid for the machinery; that the material, etc.. furnished under the contract by the appellees, together with the work. performed thereunder, and the percentages agreed upon in the contract, amount to the sum of $32,539.74, and that in addition thereto the appellees also furnished and delivered to the bankrupt other material, machinery, etc., not included in the contract, amounting to $5,958.79; that after allowing the total credits for payments made there remained a balance due the appellees under the contract of $9,827.39, and the court entered judgment for the appellees for that sum.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

J. H. Cobb and J. B. Marshall, both of Juneau, Alaska, for appellants.

Cassius E. Gates and Frank P. Helsell, both of Seattle, Wash., and Newark L. Burton, of Juneau, Alaska, for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] The appellants contend that it was error to hold that the contract was an agreement for a conditional sale, and they argue that at the time when it was made the appellees had nothing to sell, that the lumber company was merely employing them to build and equip their mill according to plans and specifications at a cost not to exceed a specified sum, that in buying the machinery and fulfilling the contract the appellees were merely agents or employés, and that in paying for the same out of their own funds they but advanced the purchase money as agents for their principal. It has been held that conditional contracts of sale are not favored in the law, and where it is doubtful upon the face of the instrument whether the contract is a conditional sale or a mortgage, it should generally be treated as a mortgage. But here the terms of the instrument leave no room to doubt that a conditional sale was provided for. The appellees were to buy and pay for the machinery and to take title thereto in the first instance in their own name. The purchase price therefor was to be paid by them, not with funds advanced by the lumber company, but with their own money. There is nothing in the instrument to give color to the suggestion that they were agents for the lumber company. On the contrary, it appears that they were contractors, who bound themselves to furnish machinery which the contract provided was thereafter to be sold to the lumber company. There is nothing in the instrument to rebut the intention, expressed in clear terms, that the sale is conditional and that—

"Title to the apparatus and material herein agreed to be sold shall not pass from the company until all payments hereinunder shall have been fully paid in cash. Upon default in any such payments, the company may retake the property agreed to be sold."

It is not rebutted by the fact that the contract provided that the title should not pass until the payment of, not only the cost of the machinery and material, but also the expense of erecting buildings and installing the machinery. All of these sums were reckoned together as constituting the cost of that which was agreed to be conditionally sold. But whether or not the appellees could retain title to the machinery until all these sums were paid is immaterial here.

[2] Under the appropriation of payments which the court below made, the unpaid balance is solely for the purchase price of the machinery and apparatus. In Harkness v. Russell, 118 U. S. 663, 7 Sup. Ct. 51, 30 L. Ed. 285, Mr. Justice Bradley said:

"Such contracts are well known in the law and often recognized, and when free from any fraudulent intent are not repugnant to any principle of justice or equity, even though possession of the property be given to the proposed purchaser."

See, also, Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 Sup. Ct. 50, 60 L. Ed. 275.

A similar contract was sustained by this court as a conditional sale in Meyer v. Pacific Machinery Co., 244 Fed. 730, 157 C. C. A. 178. The appellant cites Heryford v. Davis, 102 U. S. 235, 26 L. Ed. 160, Chicago Ry. Co. v. Merchants Bank, 136 U. S. 268, 10 Sup. Ct. 999, 34 L. Ed. 349, Forsman v. Mace, 111 La. 28, 35 South. 372, and Tompkins Co. v. Monticello Cotton Oil Co. (C. C.) 137 Fed. 625; but they are all cases in which the terms of the contract indicated that title was to pass subject to a lien for the purchase price.

[3] It is contended that the court below erred in applying the payments made by the lumber company first to the extinction of that company's debt for extras, whereas they should have been applied to the payment of the purchase price of the machinery and apparatus. The parties to the contract had no agreement as to the application of payments, and at no time did either exercise the power to make application. In Field v. Holland, 6 Cranch, 8, 3 L. Ed. 136, Chief Justice Marshall said:

But "if neither party avails himself of his power, in consequence of which it devolves on the court, it would seem reasonable that an equitable application should be made. It being equitable that the whole debt should be paid, it cannot be inequitable to extinguish first those debts for which the security is most precarious."

That rule has been followed in the federal courts and should apply here. Schuelenburg v. Martin (C. C.) 2 Fed. 747; Coons v. Tome (C. C.) 9 Fed. 532; Kortlander v. Elston, 52 Fed. 180, 2 C. C. A. 657; In re American Paper Co. (D. C.) 225 Fed. 121. Such is also the rule in Oregon, the laws of which state form the basis of the Alaskan Code. Trullinger v. Kofoed, 7 Or. 228, 33 Am. Rep. 708; Union Credit Ass'n v. Corson, 77 Or. 361, 149 Pac. 318.

[4] We find no merit in the contention that the trustee is, as to the mill and the machinery, in the position of an attaching creditor with rights superior to those of the appellees. Under the amendment of 1910 (section 47a of the Bankruptcy Act [Comp. St. § 9631]), the trustee may attack the validity of any lien or other claims against the bankrupt's property which a creditor holding a lien by legal or equitable proceedings might have attacked. Pacific State Bank v. Coats, 205 Fed. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846; Potter Mfg. Co. v. Arthur, 220 Fed. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268; National Bank of Bakersfield v. Moore, 247 Fed. 913, 160 C. C. A. 103. But it does not appear that creditors holding such liens could have successfully attacked the appellees' title.

The appellants cite Washburn v. Inter-Mountain Min. Co., 56 Or. 578, 109 Pac. 382, Ann. Cas. 1912C, 357, a case in which a stamp mill, title to which was reserved by the seller, was with his consent permanently affixed to the freehold; the conditional agreement not being recorded. The court affirmed the rule that an agreement for the conditional sale of a chattel is valid, as well against third parties as against parties to the transaction, but held that the rule relates to parties dealing for the property as a chattel, and does not apply to third par-

ties without notice of the condition, where the character of the property has been changed to realty by being affixed to the soil. In the present case there is no realty and no freehold estate, and the machinery never became a fixture. 11 R. C. L. 1058; Dudley v. Hurst, 67 Md. 44, 8 Atl. 901, 1 Am. St. Rep. 368.

"If a person owns a building, and has no property in the land, and may remove the structure when and where he pleases, it is a chattel." 11 R. C. L. 1081; Curry v. Commonwealth Ins. Co., 10 Pick. (Mass.) 535, 20 Am. Dec. 547.

The sawmill was constructed on piles on the tideland, within a forest reservation, to which no one had any title, except the government of the United States.

The decree is affirmed.